UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JINGPING XU, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3711 |
| | § | |
| THE UNIVERSITY OF TEXAS MD | § | |
| ANDERSON CANCER CENTER, et al., | § | |
| | § | |
| **Defendants.** | § | |

<u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendants' First Amended Motion to Dismiss (Doc. No. 20). After considering the Motions, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion should be granted.

I.    BACKGROUND[1]

Plaintiff brings claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments against Defendant The University of Texas M.D. Anderson Cancer Center ("UT MD Anderson"), and individual defendants Arlene Phillips ("Phillips") and Dr. Guillermina Lozano ("Lozano"), in their individual and official capacities. Plaintiff alleges that Defendants violated her rights of free speech under the First Amendment, as well as her rights of due process and equal protection under the Fourteenth Amendment. (Doc. No. 18 at 2; ¶ 3.27.)

Plaintiff was employed by UT MD Anderson as a Research Scientist in the Department of Genetics. (Doc. No. 19 at 1.) Her employment ended due to the retirement of Dr. Michael Siciliano, the professor who led her department, the resultant closing of Dr. Siciliano's

---

[1] The facts are taken from Plaintiff's Amended Response to Defendants' Motion for Rule 7 Response (Doc. No. 18) and Plaintiff's Amended Opposition to Defendant's Motion to Dismiss (Doc. No. 19), and are accepted as true for purposes of the pending motions. On May 11, 2011, the Court ruled that it would treat these documents as the functional equivalent of an amended complaint. (Minute Entry of Motion Hearing on 5/11/2011.)

laboratory, and the end of grant funding for her position. (Mot. at 2; Doc. No. 19, Ex. B, at 1.) In August 2008, Plaintiff entered into an agreement with Phillips and Dr. Siciliano that entitled Plaintiff to continue working at the UT Department of Genetics, and receiving pay, until October 28, 2008. (Doc. No. 18 ¶¶ 3.1.1–3.1.3.) At the instruction of Lozano, the Department Chair, Phillips prematurely terminated Plaintiff's employment on October 8, 2008. (*Id.* ¶ 3.1.4.) Phillips ordered Plaintiff to return her office keys and ID badge, and terminated Plaintiff's email account. (*Id.* ¶¶ 3.1.5, 3.1.6.)

On October 21, 2008, Plaintiff went to UT MD Anderson and delivered a grievance letter to Phillips. (*Id.* ¶¶ 3.2, 3.3.) Phillips reported Plaintiff's presence to the UT Police Department, and, based on Phillips' report, UT Police issued a Crime Alert Bulletin. (*Id.* ¶¶ 3.4, 3.5.) The Bulletin contained Plaintiff's photo and a physical description, and designated Plaintiff as a "suspicious person" to be reported immediately to the UT Police if seen on campus. (*Id.* ¶ 3.5.) The Bulletin also stated that Plaintiff "has no official business on property," even though Plaintiff had academic duties to carry out on the property. (*Id.* ¶ 3.6.) The issuance of the crime bulletin, and the ban that it imposed, made it difficult for Plaintiff to perform her duties as an adjunct faculty member and, later, as an affiliated research fellow. (*Id.* ¶ 3.6.)

In November, 2008, Lozano agreed to Dr. Siciliano's request to allow Plaintiff to return to work in the Basic Science Research Building (BSRB) of UT MD Anderson. (*Id.* ¶¶ 3.7, 3.8.) Phillips emailed Plaintiff on December 1, 2008 to inform her that the restriction against Plaintiff's entrance into the BSRB had been lifted. (*Id.* ¶ 3.10.) Just two days later, Phillips saw Plaintiff leaving the BSRB, and called the UT Police to report Plaintiff. (*Id.* ¶¶ 3.11, 3.12.) UT Police distributed the Crime Alert Bulletin to employees around the BSRB, and asked Plaintiff's former colleagues and others to report Plaintiff if they saw her on campus. (*Id.* ¶¶ 3.13, 3.14.)

Plaintiff protested and asked Defendants to take down the Crime Alert Bulletin and clear her name, but Defendants ignored Plaintiff's request. (*Id.* ¶¶ 3.15, 3.16.)  However, Lozano insisted that Plaintiff continue to be barred from the campus, and further banned Plaintiff from being hired back to the UT Department of Genetics "on [sic] any capacity."  (*Id.* ¶¶ 3.17, 3.18.)

In March, 2010, Plaintiff sent a formal request to UT MD Anderson, Lozano, and Phillips for a "Name Clearing Hearing" and for "remedies to resolve past damages and to prevent future damages to Plaintiff."  (*Id.* ¶ 3.20.)  Defendants ignored Plaintiff's request.  (*Id.* ¶ 3.21.)  UT Police told Plaintiff that, under the ban currently in place, she is not allowed to interview for jobs or attend seminars, workshops, or other activities on any UT property.  (*Id.* ¶ 3.23.)  Plaintiff had been an adjunct faculty member of UT at the time of the ban, and had academic duties to carry out on the property.  (*Id.* ¶ 3.26.)  Plaintiff's requests for permission to enter the campus to attend activities at UT, including those comprising part of Plaintiff's professional/academic duties, were denied or ignored.  (*Id.* ¶ 3.24.)  On one occasion, UT threatened that the police would arrest her if she appeared on campus.  (*Id.* ¶ 3.24.)  Plaintiff has lost a national training grant (a fellowship awarded from the National Institute of Health) because she could not appear on campus to fulfill the grant requirements.  (*Id.* ¶ 3.25.)  Additionally, Plaintiff has suffered unemployment and under-employment due to the "unjustified label of infamy" placed on her by Defendants.  (*Id.* ¶ 3.26.)

Defendants move to dismiss Plaintiff's claims.  They contend that Plaintiff's claims against UT MD Anderson and the individual defendants in their official capacities are barred by the Eleventh Amendment.  Additionally, they assert that Plaintiff's claim for injunctive relief against UT MD Anderson is barred as a matter of law, and that Plaintiff has failed to state a claim for injunctive relief against Defendants Lozano and Phillips.

## II.     LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.  *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A

district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea*, 47 F.3d at 1432. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999).

## III.   ANALYSIS

### A.  Individual Liability of Defendants Phillips and Lozano

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to

be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In order to state a cause of action under § 1983, a plaintiff must (1) allege a

violation of rights secured by the constitution or laws of the United States and (2) demonstrate

that the alleged deprivation was committed by a person acting under color of state law.  *Doe v.*

*Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Section 1983 claims against public officials in their individual capacities are subject to

the defense of qualified immunity.  *Foley*, 355 F.3d at 338.  "[G]overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This

standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly

incompetent or those who knowingly violate the law.'"  *DePree v. Saunders*, 588 F.3d 282, 287

(5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

In examining whether an official is entitled to qualified immunity, a court "conduct[s] the

two-step analysis" outlined in *Saucier v. Katz*, 533 U.S. 194 (2001).  *See Lytle v. Bexar Cnty.*,

560 F.3d 404, 409 (5th Cir. 2009).  A court first asks the "'threshold constitutional violation

question' of whether, taking the facts in the light most favorable to the plaintiff, the [defendant's]

alleged conduct violated a constitutional right."  *Lytle*, 560 F.3d at 410. If the alleged conduct

amounts to a constitutional violation, the court proceeds to the "'qualified immunity question' of

whether the right was clearly established at the time of the conduct."  *Id*.  If a court answers

"both the constitutional violation and qualified immunity questions affirmatively, the [defendant]

is not entitled to qualified immunity."  *Id.*  After the Supreme Court's decision in *Pearson v.*

*Callahan*, 555 U.S. 223 (2009), a court need not address these two questions in that particular order. *Id.* at 236. Though *Pearson* outlines only the two steps described above in the qualified immunity analysis, several Fifth Circuit panels have stated that the "qualified immunity question" also involves an inquiry into whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken. *See, e.g.*, *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."). Because the Court finds that Plaintiff has not pleaded facts sufficient to show that Defendants violated her constitutional rights, the Court need not consider the additional inquiries.

### 1.  Violation of Plaintiff's Constitutional Rights

The Court's first task is to determine whether Plaintiff has sufficiently alleged a violation of a constitutional right. Plaintiff alleges four separate rights violations: (1) first amendment retaliation; (2) a violation of Plaintiff's first amendment right to petition the government; (3) a violation of Plaintiff's due process rights; and (4) a violation of Plaintiff's right to equal protection.

### a.  First Amendment

### i.  Retaliation

To establish a cause of action under Section 1983 for a First Amendment retaliation claim, a public employee must show the following: "(1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency (balancing under *Pickering v. Bd. of Education*, 391 U.S. 563 (1968)), and (4) his speech was a substantial

or motivating factor behind the defendant's actions." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 375–76 (5th Cir. 2008) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)). Defendants argue that Plaintiff's speech did not involve a matter of public concern and that Plaintiff suffered no adverse employment action *after* the speech at issue.

"Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "When an employee speaks purely on a matter of personal interest, clearly no constitutional protection attaches." *See Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998). However, "even a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 826 (5th Cir. 2007).

In cases involving this type of "mixed speech," courts have applied two tests. Under the first, courts must consider "the *Connick* factors of content, context, and form, and determine whether the speech is public or private based on these factors." *Teague v. City of Flower Mound, Tex.,* 179 F.3d 377, 382 (5th Cir. 1999). The second test, labeled the "citizen-employee" test, evaluates the "extent to which the terminated employee spoke as a citizen or employee." *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). The two tests rarely lead to different results. *See Stotter*, 508 F.3d at 826 n.4 ("Indeed, it seems clear that the question of whether an employee was speaking as a "citizen" or as an "employee" under the citizen-employee test is sufficiently covered by the content and context prongs of the content-form-context test.")

Mixed speech cases are difficult, and "require[] a precise and factually-sensitive determination." *Kennedy*, 224 F.3d at 367. Plaintiff's motivation in giving Phillips the

grievance letter is relevant.  *See Kinney v. Weaver,* 367 F.3d 337, 361 (5th Cir. 2004) ("The weight of the First Amendment interest is, of course, not measured solely by the [speaker's] own personal gain, if any, from speaking."); *see also Harris ex rel. Harris v. Pontotoc County School Dist.*, 635 F.3d 685, 692 (5th Cir. 2011) ("Rather than looking at whether the public might or would have an interest in the matter, the court examines whether the speaker's motivation was to speak primarily as a citizen or as an employee."); *Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 341 (5th Cir. 2003) ("Speech that is primarily motivated by, or primarily addresses, the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983.").[2]

Plaintiff's Amended Complaint says only that the grievance contained a matter of public concern because it concerned the alleged breach of an employment agreement.  (Doc. No. 19 at 11.)  The letter was "against Phillips," and Plaintiff gave the letter directly to Phillips.  (Doc. No. 18 ¶ 3.2–3.3.)  Plaintiff does not attach the entirety of the grievance to her complaint or her Response to the Motion to Dismiss, but instead cites just one sentence:

> I requested that the Department (of Genetics, UT-MDA), or its representative Ms. Arlene Phillips, learn a lesson from this incidence [sic] and in the future treat its employees, especially loyal, veteran employees, with fairness and due respect, and give truthful information/reason of action to the employee . . .

(Resp. at 4.)  As neither the grievance letter nor this statement is contained in the Amended Complaint, the Court may not consider it in evaluating whether Plaintiff has stated a claim under Rule 12(b)(6).

---

[2] The Fifth Circuit has also stated that "[n]either the accuracy of the speech, nor the motivation of the speaker, plays a role in determining whether the expression involves a matter of public concern."  *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir. 1998).  However, the Fifth Circuit has also noted that it has "never cited *Denton* to support the position that the reasons for the plaintiff's speech are entirely unimportant."  *Chavez v. Brownsville Indep. School Dist.*, 135 Fed. Appx. 664, 670 n.1 (5th Cir. 2005) ("Indeed, *Gonzalez v. Benavides,* the case cited by *Denton* for this proposition, merely argues for the existence of speech with 'mixed' issues of both public and private concern." (internal quotations and citation omitted)).  Accordingly, the Court considers the reasons for Plaintiff's grievance letter.

However, even taking into account this portion of the letter, the Court is not convinced that Plaintiff's grievance raised a matter of public concern, especially given that Plaintiff's Amended Complaint admits that the gravamen of her grievance concerned Defendant's breach of an employment agreement.  (Doc. No. 19 at 11.)

As the Fifth Circuit stated:

> The content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government.  If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. . . . [T]he speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.

*Kennedy*, 224 F.3d at 372.  The First Amendment cannot protect speech when "the only reason that the public would be concerned about the speech there at issue was because it involved a public workplace."  *Wilson v. UT Health Center*, 973 F.2d 1263, 1269 (5th Cir. 1992).  Based on the portion of the letter cited by the Plaintiff, releasing the letter to the public would not reveal more than a "disgruntled employee's dispute with [her] employer."  *Kennedy*, 224 F.3d at 373.

It is important to examine the entirety of the letter to discern its content, context, form, and whether Plaintiff was speaking as a citizen or employee. In *Stotter*, the Fifth Circuit determined that the memo at issue was "primarily a private grievance about wages," despite the existence of a sentence containing an allegation of corruption.  *Stotter*, 508 F.3d at 826–27.  "There is simply no evidence that in writing this memo, [Plaintiff] was trying to publicize allegations of corruption; . . . at all times, [Plaintiff] was speaking as an aggrieved employee, about a classic employment issue."  *Id.* at 827 (internal quotations omitted).  Similarly, in *Gillum*, the Fifth Circuit found that "the employee did not speak as a citizen, but as an employee embroiled in a personal employment dispute."  *Gillum*, 3 F.3d at 121.  Gillum, a police officer,

argued that he was fired for expressing his opinion about the investigation of Barrow, the police

chief, and for refusing to participate in a conspiracy to stonewall the investigation.  The Fifth

Circuit found:

> Whether Barrow broke the law is of public concern, but that was not Gillum's
> focus. Instead, Gillum disputed his role in the internal investigation. To be sure,
> corruption in an internal affairs department is a matter of public concern. Gillum's
> focus was, however, on this issue only insofar as it impacted his wish to continue
> his investigation.

*Id.*  Similarly, Plaintiff admits that her grievance letter was focused on her employment dispute.

(Doc. No. 19 at 11.)  Her request that Phillips "learn a lesson" from this breach of contract still

does not "inform the populace of more than the fact of an employee's employment grievance."

*Kennedy*, 224 F.3d at 372.  The Court is not able to examine the entirety of the letter, but

considers only the portion of the sentence provided by Plaintiff against Plaintiff's own admission

about the gravamen of the letter.  Simply because "addressing the grievance may have prevented

future incidents of breaching of contracts from happening to other employees" does not cause

this grievance letter to raise a matter of public concern.  (Doc. No. 19 at 11.)  *See Dodds v.*

*Childers*, 933 F.2d 271, 273 (5th Cir. 1991) ("[A]n employee cannot transform a personal

conflict into an issue of public concern simply by arguing that individual concerns might have

been of interest to the public under different circumstances."). [3]

Although Plaintiff did not raise any issue with Defendant's invocation of the test for

public employees, the Court notes that this test properly applies to Plaintiff even though, at the

time of the speech, she was no longer an employee.  "In general, courts have invoked two

reasons for applying the test outside of the employment context: that the relationship involved

was     analogous     to     an     employer-employee     relationship     and     that     the     principle

---

[3] Because the Court finds that Plaintiff's speech does not raise an issue of public concern, the Court need not
consider Defendants' alternative argument that they did not take any action that can be considered an adverse
employment action.

underlying *Connick* warranted its application." *Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995). As the *Connick* Court explained, "[I]t would indeed be a Pyrrhic victory for the great principles of free expression if the Amendment's safeguarding of a public employee's right, as a citizen, to participate in discussions concerning public affairs were confused with the attempt to constitutionalize the employee grievance that we see presented here." *Connick,* 461 U.S. at 154. "Thus, the Court in *Connick* recognized that a public employer enjoys wide latitude in the administration of its own affairs and underscored a reluctance to convert every workplace grievance into a constitutional claim." *Blackburn*, 461 U.S. at 933. Plaintiff's grievance letter concerned her termination, and Plaintiff complains that Defendants retaliated against her letter by restricting her access to campus and banning her from future employment. She delivered this letter, and Phillips called UT Police, on October 21, 2008, on which date she alleges she was still supposed to be employed under the terms of the agreement with Phillips and Dr. Siciliano. Accordingly, this claim is properly evaluated within the public employment context, as outlined above, and the Court finds that Plaintiff has not stated a claim for First Amendment retaliation.

### ii.  First Amendment Right to Petition

Like Plaintiff's claim for First Amendment retaliation, the right to petition against the government as employer is limited to matters of public concern. *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. ---, 131 S. Ct. 2488, 2501 (2011). As noted above, Plaintiff's grievance letter did not constitute speech on a matter of public concern. Therefore, Plaintiff cannot proceed against the individual defendants for this violation.

### b.  Fourteenth Amendment

Plaintiff alleges that Defendants' conduct violated the Due Process and Equal Protection clauses of the U.S. Constitution. The Fourteenth Amendment to the U.S. Constitution provides

that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." In order to prove that her due process rights were violated, Plaintiff must show that she has "asserted a recognized liberty or property interest within purview of Fourteenth Amendment and that [she] was intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Woodard v. Andrus,* 419 F.3d 348, 353 (5th Cir. 2005) (quoting *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 450 (5th Cir. 1994)). With regard to equal protection, "if a law neither burdens a fundamental right nor targets a suspect class, [courts] will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631 (1996). However, "if a classification does target a suspect class or impact a fundamental right, it will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Sonnier v. Quarterman,* 476 F.3d 349, 368 (5th Cir. 2007) (citing *Plyler v. Doe,* 457 U.S. 202, 217–18 (1982)).

### i. Procedural Due Process

Plaintiff alleges that Defendants stigmatized Plaintiff by banning her from campus, publishing and distributing the Crime Alert Bulletin, and keeping the police reports and crime alert bulletins in Plaintiff's file without providing the opportunity for a "name clearing hearing." (Doc. No. 18 ¶¶ 3.5, 3.13, 3.20–3.22; Doc. No. 19 at 7.) In *Paul v. Davis,* 424 U.S. 693, 710–12 (1976), the Supreme Court held that the infliction of a stigma on a person's reputation, without more, does not infringe upon a protected liberty interest under the due process clause. Thus, the Fifth Circuit has required "a section 1983 plaintiff to show stigma plus an infringement of some other interest." *Blackburn*, 42 F.3d at 935–36 (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1997)). The Fifth Circuit has found a violation of due process where a

plaintiff's "employment or employment opportunities were damaged in addition to her reputation *and* if she was subsequently denied due process to remedy that damage." *Myrick v. City of Dallas*, 810 F.2d 1382, 1385 (5th Cir. 1987) (citing *In re Selcraig,* 705 F.2d 789, 796 (5th Cir. 1983)). "[T]he stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal at issue here, though loss of a property interest (such as tenured employment) is not required." *Wells v. Hico Independent School Dist.*, 736 F.2d 243, 256 (5th Cir. 1984).

Defendants contend that the stigmatizing statements did not have a sufficient connection to Plaintiff's termination, as Plaintiff gave Phillips the letter and the Crime Alert Bulletin was issued after she was terminated.  However, the Court finds that Plaintiff's factual allegations are sufficient in this respect.  When Plaintiff delivered her grievance letter to Phillips on October 21, 2008, she thought she was entitled to another week of employment under the contract and wanted to be allowed back into the BSRB.  (Doc. No. 18 ¶¶ 3.1.1–3.1.3, 3.4, 3.5.)  With the issuance of the Crime Alert Bulletin and the stigmatizing statements therein, Defendants took further action against Plaintiff, and barred Plaintiff from future employment with the UT Department of Genetics (*id.* ¶ 3.18) and employment on any UT property (*id.* ¶ 3.23).  The Fifth Circuit and Supreme Court have recognized a liberty interest where the stigmatizing statements were made not only in connection with a termination, but also in connection with a nonrenewal of an employment contract or refusal to rehire.  As the Supreme Court stated, in a case where the state has "refused to re-employ" the plaintiff and made a "charge against him that might seriously damage his standing and associations in his community[,] . . . due process would accord an opportunity to refute the charge before University officials." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).  Additionally, the Fifth Circuit has articulated that

the standard is whether the statements "occur in connection with, and be closely enough related to, the employee's nonrenewal or discharge so as to cause that action to be stigmatizing." *Wells*, 736 F.2d at 256 n.17 (citing *Owen v. City of Independence,* 445 U.S. 622, 633 n.13 (1980); *Marrero v. City of Hialeah,* 625 F.2d 499, 519 (5th Cir. 1980)).   The Court finds that standard is satisfied here.

Plaintiff also "must prove that the stigma was caused by a false communication." *Kacal*, 928 F.2d at 701 (internal quotations and citation omitted); *see also Codd v. Velger*, 429 U.S. 624 (1977).   The communication must contain "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of claimant." *Id.*   The police communication was labeled "Crime Alert Bulletin—Suspicious Activity" and falsely indicated that Plaintiff was a "suspicious person" who had "no official business on property."  (Doc. No. 19, Ex. A.)  Plaintiff avers that this is false because she did have official business on the property, relating to her professional and academic duties as an adjunct faculty member at the time of the ban. (*Id.* ¶¶ 3.6; 3.26.)  Moreover, Plaintiff asserts that Phillips called Plaintiff "unstable" in an email to Dr. Siciliano.  (Doc. No. 19, Ex. B, at 2.)  Additionally, the Court must consider whether Defendants "impose[d] a stigma on [Plaintiff] of the nature that works a deprivation of a liberty interest." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997).   In *Cabrol*, the mayor terminated the plaintiff after a letter and public discussion about the "stinky, unsightly, [and] noisy" cockfighting chickens that he was raising in his yard.   Here, unlike *Cabrol*, the communication was labeled a crime alert and identified Plaintiff as suspicious person, a "charge . . . that might seriously damage [her] standing and association in the community, or put [Plaintiff]'s good name, reputation, honor, or integrity at stake." *Id.* (internal quotations omitted) (quoting *Roth*, 408 U.S. at 573).  The accusations of crime, suspicious activity, and that Plaintiff

15

had no official business activity were, according to Plaintiff's statement of facts, "false assertions of wrongdoing on the part of the plaintiff." *Blackburn*, 42 F.3d at 936 (emphasis removed).

However, the Court need not resolve these questions of falsity or stigmatization at this time because the Court cannot determine which, if any, of the statements were made publicly. Plaintiff has not alleged that any of the statements were "made public or that any defendant made [them] public" by disseminating them outside of the workplace. *Blackburn,* 42 F.3d at 936 n.10 (citations omitted). Plaintiff does not allege that either Lozano or Phillips made false statements to anyone other than UT Police, Human Resources, and Dr. Siciliano. *See Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989) (stating that the charges had never been made public because "the decision had only been made known in the workplace"); *Ortwein v. Mackey*, 511 F.2d 696, 699 & n.3 (5th Cir. 1975) (finding that there was no allegation that the University had publicly disclosed its statements, as "no one outside the University has ever been made aware of the reasons for the non-renewal of the plaintiff's contract"). Moreover, according to Plaintiff's statement of facts, UT Police "displayed the said Crime Alert Bulletin *to employees around BSRB* and distributed it" and also "asked Plaintiff's former colleagues and other employees to report Plaintiff if seen on campus." (Doc. No. 18 ¶¶ 3.13–3.14.) Plaintiff also does not allege that her personnel file was publicly available. *See Tebo v. Tebo*, 550 F.3d 492, 504 (5th Cir. 2008); *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000). Finally, while Plaintiff alleges that she has lost a national training grant because of Defendants' actions, this was not due to any stigmatizing statements of the Defendants, but because she was "not able to fulfill the grant requirements, including academic activities and duties on UT property." (Doc. No. 18 ¶ 3.25.) "This absence of 'publication' must mean, consequently, that [Plaintiff] could

not have been denied subsequent employment opportunities" outside of UT due to any of Defendants' statements. *Moore*, 871 F.2d at 549.

The Court grants Plaintiff leave to amend on this issue. If Plaintiff can add allegations to her complaint showing that Phillips and Lozano disclosed stigmatizing false statements to the public, she may file an amended complaint within 30 days of this Order.

### ii. Equal Protection

Defendants claim that Plaintiff has failed to identify a fundamental right that was violated or a suspect classification, and that rational bases exist for Defendants' actions. Defendants also argue that this claim fails because she has failed to identify a particular statute that violates the Equal Protection Clause. However, "[i]t is well settled that . . . the [Equal Protection] Clause's protections apply to administrative as well as legislative acts." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 597 (2008).

Plaintiff has not asserted a fundamental right. A fundamental right is one that is explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 34 (1973). Plaintiff's Amended Complaint does not assert clearly what fundamental rights Defendants violated. She states that she "has a right not to be treated differently by the government than other citizens similarly situated." (Resp. at 10.) However, this is merely a restatement of the equal protection clause, and is not a fundamental right that subjects her claim to strict scrutiny. Plaintiff also argues that she "has a fundamental right to earn a living without the burden of an unjustified label of infamy," (Resp. at 10) but reputational injury is also not a recognized fundamental right. Plaintiff does not explain how this right is "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33–34 (1973). The Court will not recognize it as such in light of the

Supreme Court's determination that stigmatic harm is not, by itself, a liberty or property interest under the due process clause. *Paul v. Davis*, 424 U.S. 693, 712 (1976); *see also Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503 & n.10 (1977) (noting that the Supreme Court is similarly restrained in determining whether an asserted substantive right is entitled to heightened scrutiny under the Equal Protection Clause as it is when determining whether the liberty is one protected under the due process clause).

Plaintiff asserts that she was treated differently than other employees and former employees who filed grievances. Thus, Plaintiff has failed to identify a suspect classification under the Fourteenth Amendment, but rather bases her claim on a "class of one" theory. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).

"To establish such a claim, the plaintiff must show that (1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Stotter v. Univ. of Tex. at San Antonio,* 508 F.3d 812, 824 (5th Cir. 2007) (citing *Olech,* 528 U.S. at 564). Plaintiff states that other employees and former employees who filed grievances did not have Crime Alert Bulletins issued against them, were allowed to visit UT and other campuses of UT after termination, and were able to seek new employment and be rehired. (Doc. No. 19 at 12.) Plaintiff fails to identify specifics about how other employees or former employees were similarly situated. *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205 (11th Cir. 2007); *Maryland Manor Associates v. City of Houston*, Civ. A. No. H–10–1736, 2011 WL 4007859, at *7 (S.D. Tex. Sept. 8, 2011) (citing post-*Twombly* cases articulating the standard to plead that others are similarly situated). Even if the Court were to liberally construe

18

Plaintiff's factual allegations to state a claim in this respect,[4] Plaintiff's claims against the individual defendants under the equal protection clause must be dismissed.

Defendants assert that UT MD Anderson has three legitimate interests: (1) an interest in the "proper and efficient operation of [UT MD Anderson's] facilities without the distraction to its employees in the performance of their duties by unauthorized, non-employee visitors coming onto the premises"; (2) an interest in preventing "the disruption of the education process"; and (3) an interest in preventing "possible security concerns in connection with unauthorized visitors as well as avoiding potential liability that it may incur by accidents that may be caused by such visitors." (Mot. at 23.) Courts have found that similar interests are legitimate. *See Healy v. James*, 408 U.S. 169, 184 (1972) ("[A] college has a legitimate interest in preventing disruption on the campus."); *Dike v. School Bd. of Orange County, Fla.*, 650 F.2d 783, 785 (5th Cir. Unit B. July 1981) ("The school board's interests in avoiding disruption of the educational process, in ensuring that teachers perform their duties without distraction, and in avoiding potential liability for accidents are presumably legitimate."), *overruled on other grounds by Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997); *Khademi v. South Orange County Community College Dist.*, 194 F. Supp. 2d 1011 (C.D. Cal. 2002) (finding legitimate state interests in protecting student safety and preventing disruption of the learning environment).

Plaintiff disputes that these interests were rationally applied to her, as she was not an "unauthorized visitor." Plaintiff avers that she did have official business on the property, relating to her professional and academic duties as an adjunct faculty member at the time of the ban. (*Id.* ¶¶ 3.6; 3.26.) Although Plaintiff does not explain how her status as an adjunct faculty member

---

[4] Because Plaintiff is proceeding *pro se*, the Court must "interpret her pleadings liberally, affording her all reasonable inferences which can be drawn from them." *Murray v. Astrue*, 419 Fed. Appx. 539, 540 (citing *In re Texas Pig Stands, Inc.,* 610 F.3d 937, 941 n.4 (5th Cir. 2010)).

continued even after the time that her employment was terminated, the Court understands this argument to be that Plaintiff still maintained some of the benefits of employment after her official termination, as she still had duties to perform on campus.

Plaintiff cannot use these reasons to negate Defendants' proffered legitimate interest. To the extent Plaintiff's arguments center on benefits and duties of an employee, these arguments are barred by *Engquist*, 553 U.S. 591. In *Engquist*, the Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." *Id.* at 598. In instituting this categorical ban of all class-of-one claims in the public employment context, the Supreme Court noted, "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id.* at 605. The Supreme Court sought to prevent a situation where "any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.* at 608. Accordingly, Plaintiff may not use details specific to her employment at UT MD Anderson or any assertion of special employee benefits to assert a class-of-one equal protection claim against Defendants.

### B. Claims against UT MD Anderson and against Phillips and Lozano in their Official Capacities

Defendants argue that the Eleventh Amendment bars any claim for damages against UT MD Anderson and the individual defendants in their official capacities. Neither a state nor individuals acting in their official capacities are "persons under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). However, Plaintiff's Amended Complaint also states that she is "not seeking damages . . . against UT and Phillips and Lozano in their official capacities."

(Doc. No. 19 at 3.)  She is seeking only injunctive relief against UT MD Anderson and Phillips and Lozano in their official capacities under *Ex Parte Young*, 209 U.S. 123 (1908).  (*Id.*)

"Under *Ex parte Young,* 'a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law.'" *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (quoting *Quern v. Jordan,* 440 U.S. 332, 337 (1979)).  The *Ex parte Young* exception to Eleventh Amendment immunity "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."  *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citing *Cory v. White,* 457 U.S. 85, 90–91 (1982)).  Thus, Plaintiff's claim for injunctive relief against UT MD Anderson must be dismissed.

Additionally, Plaintiff's *Ex parte Young* claims against Lozano and Phillips are based on the same First and Fourteenth Amendment claims that the Court examined above.  As the Court found that Plaintiff failed to state a claim for these constitutional violations, Plaintiff's *Ex parte Young* claims also must be dismissed.

### C.  Amendment

The Court previously allowed Plaintiff the opportunity to amend her complaint after Defendants filed their first Motion to Dismiss.  In this Order, the Court has identified many deficiencies that Plaintiff cannot overcome with additional factual allegations.  Therefore, the Court will allow Plaintiff leave to amend only on the narrow basis identified in this order—to add factual allegations relating to her due process claim, specifically relating to Defendants' public disclosure of the statements.

IV.    **CONCLUSION**

For the reasons stated in this order, Defendant's First Amended Motion to Dismiss is

**GRANTED**. Plaintiff may file an amended complaint within 30 days that corrects the

deficiencies identified with her due process claim.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 22nd day of February, 2012.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE