UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JINGPING XU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3711 |
| | § | |
| THE UNIVERSITY OF TEXAS MD | § | |
| ANDERSON CANCER CENTER, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Second Motion to Dismiss ("Second Motion") (Doc. No. 36) and Defendants' Third Motion to Dismiss ("Third Motion") (Doc. No. 41). After considering the Motions, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motions should be denied.

## I. BACKGROUND[1]

Plaintiff brings a claim under 42 U.S.C. § 1983 against Defendants Arlene Phillips ("Phillips") and Dr. Guillermina Lozano ("Lozano"), in their individual capacities.[2] Plaintiff alleges that Defendants violated her right of due process under the Fourteenth Amendment.

Plaintiff was employed for more than seventeen years by UT MD Anderson as a Research Scientist in the Department of Genetics. (Doc. No. 19 at 1.) Her employment ended due to the retirement of Dr. Michael Siciliano, the professor who led her department, the

---

[1] In Plaintiff's Second Amended Complaint (Doc. No. 30), she alleges additional facts and also her previous complaints. The facts are taken from this Second Amended Complaint, as well as Plaintiff's Amended Response to Defendants' Motion for Rule 7 Response (Doc. No. 18) and Plaintiff's Amended Opposition to Defendant's Motion to Dismiss (Doc. No. 19). On May 11, 2011, the Court ruled that it would treat these two documents as the functional equivalent of an amended complaint. (Minute Entry of Motion Hearing on 5/11/2011.) The allegations contained in these documents are accepted as true for purposes of the pending motions.
[2] The Court previously dismissed claims against UT MD Anderson and against the individual Defendants in their official capacities.

1

resultant closing of Dr. Siciliano's laboratory, and the end of grant funding for her position. (Doc. No. 19, Ex. B, at 1.) In August 2008, Plaintiff entered into an agreement with Phillips and Dr. Siciliano that entitled Plaintiff to continue working and receiving pay at the UT Department of Genetics, until October 28, 2008. (Doc. No. 18 ¶¶ 3.1.1–3.1.3.) At the instruction of Lozano, the Department Chair, Phillips prematurely terminated Plaintiff's employment on October 8, 2008. (*Id.* ¶ 3.1.4.) Phillips ordered Plaintiff to return her office keys and ID badge, and terminated Plaintiff's email account. (*Id.* ¶¶ 3.1.5, 3.1.6.)

On October 21, 2008, Plaintiff went to UT MD Anderson and delivered a grievance letter to Phillips. (*Id.* ¶¶ 3.2, 3.3.) Phillips reported Plaintiff's presence to the UT Police Department, and, based on Phillips' report, UT Police issued a Crime Alert Bulletin. (*Id.* ¶¶ 3.4, 3.5.) The Bulletin contained Plaintiff's photo and a physical description, and designated Plaintiff as a "suspicious person" to be reported immediately to the UT Police if seen on campus. (*Id.* ¶ 3.5.) The Bulletin also stated that Plaintiff "has no official business on property," even though Plaintiff had academic duties to carry out on the property. (*Id.* ¶ 3.6.) The issuance of the crime bulletin, and the ban that it imposed, made it difficult for Plaintiff to perform her duties as an adjunct faculty member and, later, as an affiliated research fellow. (*Id.* ¶ 3.6.)

In November 2008, Lozano agreed to Dr. Siciliano's request to allow Plaintiff to return to work in the Basic Science Research Building (BSRB) of UT MD Anderson. (*Id.* ¶¶ 3.7, 3.8.) Phillips emailed Plaintiff on December 1, 2008 to inform her that the restriction against Plaintiff's entrance into the BSRB had been lifted. (*Id.* ¶ 3.10.) Just two days later, Phillips saw Plaintiff leaving the BSRB, and called the UT Police to report Plaintiff. (Id. ¶¶ 3.11, 3.12.) Defendants claim the police were called because Phillips witnessed Xu "leaving the Basic Science Research Building in a hurry with two large bags in her hands." (Doc. No. 36, at 9.) UT

Police distributed the Crime Alert Bulletin to employees around the BSRB, and asked Plaintiff's former colleagues and others to report if they saw Plaintiff on campus. (Doc. No. 18 ¶¶ 3.13, 3.14.) Plaintiff protested and asked Defendants to take down the Crime Alert Bulletin and clear her name, but Defendants ignored Plaintiff's request. (*Id.* ¶¶ 3.15, 3.16.) Lozano insisted that Plaintiff continue to be barred from the campus, and further banned Plaintiff from being hired back to the UT Department of Genetics "on [sic] any capacity." (*Id.* ¶¶ 3.17, 3.18.)

In March 2010, Plaintiff sent a formal request to UT MD Anderson, Lozano, and Phillips for a "Name Clearing Hearing" and for "remedies to resolve past damages and to prevent future damages to Plaintiff." (*Id.* ¶ 3.20.) Defendants ignored Plaintiff's request. (*Id.* ¶ 3.21.) UT Police told Plaintiff that, under the ban currently in place, she is not allowed to interview for jobs or attend seminars, workshops, or other activities on any UT property. (*Id.* ¶ 3.23.) Plaintiff had been an adjunct faculty member of UT at the time of the ban, and had academic duties to carry out on the property. (*Id.* ¶ 3.26.) Plaintiff's requests for permission to enter the campus to attend activities at UT, including those comprising part of Plaintiff's professional/academic duties, were denied or ignored. (*Id.* ¶ 3.24.) On one occasion, UT threatened that the police would arrest her if she appeared on campus. (*Id.* ¶ 3.24.) Plaintiff has lost a national training grant (a fellowship awarded from the National Institute of Health) because she could not appear on campus to fulfill the grant requirements. (*Id.* ¶ 3.25.) Additionally, Plaintiff has suffered unemployment and under-employment due to the "unjustified label of infamy" placed on her by Defendants. (*Id.* ¶ 3.26.)

Plaintiff alleges that Defendants' stigmatizing statements were made public because they were placed in UT MD Anderson's files available to the public, communicated to Dr. Siciliano, and published on the public campus. (Doc. No. 30 at 2–5.) Plaintiff also states that she was

3

compelled to disclose the existence of the Crime Alert Bulletin and the ban from campus to employers and potential employers, which has prevented her from keeping and obtaining those jobs or fellowships. (*Id.* at 5–6.)

The Court has previously dismissed all of Plaintiff's claims, and allowed Plaintiff leave to amend her stigma plus infringement due process claim under Section 1983 against Defendants Phillips and Lozano. Defendants now move to dismiss this claim.

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea*, 47 F.3d at 1432. "Heightened

pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999).

Under Federal Rule of Civil Procedure 12(d), a motion to dismiss must be treated as a Rule 56 motion for summary judgment if the court considers matters outside the pleadings in deciding the motion. Before a Rule 12(b)(6) motion may be converted to a Rule 56 motion, a court must be satisfied that "the nonmoving party has . . . had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

### III. ANALYSIS

#### A. Section 1983 Claim

As an initial matter, the Court must determine whether to consider the affidavits attached to Defendants' Motion. These documents are not referenced in the complaint, and thus are outside the scope of what can be considered in a motion to dismiss. Furthermore, because Plaintiff has not had the opportunity to conduct discovery, vigorously disputes the facts contained in the affidavits (*see* Resp. at 1–6), and is proceeding pro se, the Court finds that converting the Motion to a summary judgment motion is inappropriate at this time.

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity. *Foley*, 355 F.3d at 338. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz*, 533 U.S. 194 (2001). *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009). A court first asks the "'threshold constitutional violation question' of whether, taking the facts in the light most favorable to the plaintiff, the [defendant's] alleged conduct violated a constitutional right." *Lytle*, 560 F.3d at 410. If the alleged conduct amounts to a constitutional violation, the court proceeds to the "'qualified immunity question' of whether the right was clearly established at the time of the conduct." *Id*. If a court answers "both the constitutional violation and qualified immunity questions affirmatively, the [defendant] is not entitled to qualified immunity." *Id*. After the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), a court need not address these two questions in that particular order. *Id.* at 236. Though *Pearson* outlines only the two steps described above in the qualified

immunity analysis, several Fifth Circuit panels have stated that the "qualified immunity question" also involves an inquiry into whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken. *See, e.g., Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."). With these motions, Defendants do not argue either that the right was not clearly established or that the actions were objectively reasonable, and thus the Court does not consider these inquiries.

Plaintiff alleges that Defendants stigmatized Plaintiff by banning her from campus, publishing and distributing the Crime Alert Bulletin, and keeping the police reports and crime alert bulletins in Plaintiff's file without providing the opportunity for a "name clearing hearing." (Doc. No. 18 ¶¶ 3.5, 3.13, 3.20–3.22; Doc. No. 19 at 7.) In *Paul v. Davis*, 424 U.S. 693, 710–12 (1976), the Supreme Court held that the infliction of a stigma on a person's reputation, without more, does not infringe upon a protected liberty interest under the due process clause. Thus, the Fifth Circuit has required "a section 1983 plaintiff to show stigma plus an infringement of some other interest." *Blackburn*, 42 F.3d at 935–36 (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1997)). The Fifth Circuit has found a violation of due process where a plaintiff's "employment or employment opportunities were damaged in addition to her reputation *and* if she was subsequently denied due process to remedy that damage." *Myrick v. City of Dallas*, 810 F.2d 1382, 1385 (5th Cir. 1987) (citing *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983)). "[T]he stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal at issue here, though loss of a property interest (such as tenured employment) is not required." *Wells v. Hico Indep. School*

*Dist.*, 736 F.2d 243, 256 (5th Cir. 1984). The Court has already found that the stigmatizing statements had a sufficient connection to Plaintiff's employment and discharge to affect her "liberty interest in the prospect of future employment." *Moore v. Miss. Valley State University*, 871 F.2d 545, 550 (5th Cir. 1989). (*See* Memorandum and Order, Doc. No. 29, at 13–15.)[3] *See also Velez v. Levy*, 401 F.3d 75, 88–89 (2d Cir. 2005) ("[P]erfect parity in the origin of both the 'stigma' and the 'plus' is not required to state the infringement of a 'stigma-plus' liberty interest.")

The Court did not resolve issues relating to publication, falsity, and stigmatization of the communications, as it did not know, at the time, which communications, if any, were made public. (*Id.* at 16–17.) It allowed Plaintiff leave to amend to add allegations regarding publication. (*Id.* at 17.)

### 1. Publication

Plaintiff must show that Defendants made the statements about the Plaintiff public outside of the workplace. *Moore*, 871 F.2d at 549. Because the remaining claims are against the Defendants in their individual capacities, she must show that Defendants "personally publicized the defamatory statements." *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012); *see also Hughes v. City of Garland*, 204 F.3d 223, 227 (5th Cir. 2000) ("[P]ublic disclosure must be fairly attributable to the defendant employer."); *Blackburn v. City of Marshall,* 42 F.3d 925, 936 (5th Cir. 1995) (affirming dismissal because there were no allegations that defendant "made (or caused to be made) any statement at all").

Plaintiff's most recent amendment to her complaint provides additional allegations involving four disclosures: (1) inclusion of certain contents in Plaintiff's publically-available

---

[3] Defendants assert that there was no agreement to extend Plaintiff's employment. (Second Mot. at 6 (citing Lozano Aff., Doc. No. 36-7, ¶ 3).) However, the Court must accept Plaintiff's allegations as true in evaluating the Motion to Dismiss.

employment file; (2) communications with Dr. Siciliano; (3) public posting of the bulletin on campus; and (4) compelled self-publication. (Second Am. Compl., Doc. No. 30, at 2–6.)

With respect to the email to Dr. Siciliano, Plaintiff does not allege facts sufficient to show that a statement to him can be considered a statement outside of the workplace. Although Plaintiff states that "he was no longer a UT-MDA employee" (Second Am. Compl. at 4), according to emails attached to Plaintiff's Complaint, he still used his UT MD Anderson email address and was affiliated with the university. (Doc. No. 18, Ex. B.) The Court finds that the email to Dr. Siciliano cannot constitute publication.

Plaintiff also argues that compelled self-publication can satisfy the publication requirement. However, in *Bellard*, the Fifth Circuit confirmed that, in this circuit, "there is no publication for purposes of a deprivation of a liberty interest if the plaintiff caused the stigmatizing facts to be made public." *Bellard*, 675 F.3d at 462 (citing *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir. 1984)); *see also Hughes v. City of Garland,* 204 F.3d 223, 228 (5th Cir. 2000). This includes publication to third parties acting on a plaintiff's behalf. *Bellard*, 675 F.3d at 462. Thus, the allegations contained under the heading of "Compelled self-publication" in Plaintiff's Second Amended Complaint are not sufficient to support her claim.

Plaintiff's Second Amended Complaint also alleges that both the police report (Doc. No. 30, Ex. A) and Crime Alert Bulletin (Doc. No. 19, Ex. A) are available through a request to the police department. A "potential business partner/employer" obtained a copy of the police report through the UT Police after Plaintiff told her that she was banned from campus. (Doc. No. 30 at 3.) Moreover, the Crime Alert Bulletin was posted on campus where it could be seen not only by employees of the university, but by members of the public who were on campus. Defendants assert that no future disclosures of this information will occur because these documents are

excepted from requirements of public disclosure under the Public Information Act. Defendants also argue that any disclosure of the police report in the past was "due to administrative oversight." (Defendants' First Supplement to Second Motion to Dismiss, Doc. No. 40, at 2.) However, the fact that this disclosure may have been inadvertent does not mitigate the effect of past disclosures, such as the disclosure to Plaintiff's potential employer.

Plaintiff also alleges that other stigmatizing information is available in her personnel file, including Lozano's order that Plaintiff was never to be hired by UT, that Plaintiff should continue to be banned from campus, and an accusation that Plaintiff threatened Phillips. There is no indication that this information was disclosed to Plaintiff's prospective employer or anyone else outside of the university or Plaintiff herself. However, Plaintiff contends that this information is publically available, because the personnel file is subject to disclosure through the Public Information Act. (Doc. No. 30 at 3.) Defendants do not dispute that the files are public, but aver that Plaintiff's personnel file does not contain any of the information alleged by Plaintiff about her alleged criminal activity, her ban from campus, or allegations of threats. (*See* Second Mot. at 7–8; Aff. of David Taylor, Doc. No. 36-4, ¶ 5.) As noted above, however, the Court will not consider summary judgment evidence at this time. Thus, Plaintiff has sufficiently alleged that stigmatizing information is available to the public through her personnel file, and Defendants may challenge the existence of this information at summary judgment.

## 2. Falsity

Plaintiff also "must prove that the stigma was caused by a false communication." *Kacal*, 928 F.2d at 701 (internal quotations and citation omitted); *see also Codd v. Velger*, 429 U.S. 624 (1977). The communication must contain "concrete, false factual representations or assertions, by a state actor, of wrongdoing on the part of claimant." *Id.*

The police report from December 3, 2008, states that Plaintiff was to be allowed into the BSRB by appointment only, and that Plaintiff had appeared many times without an appointment. (Doc. No. 30, Ex. A.) The police officer who wrote the report noted that he explained to "several employees" in Plaintiff's former lab that Plaintiff was not allowed back on BSRB property, and the officer asked these employees to contact the police department if Plaintiff came back on the property. (*Id.*) Plaintiff contends that this is false because she had been given permission to enter BSRB just two days before. The police report states clearly that Plaintiff was trespassing on UT MD Anderson property and asked employees to report Plaintiff's presence on campus in the future.

The other police communication was labeled "Crime Alert Bulletin—Suspicious Activity" and falsely indicated that Plaintiff was a "suspicious person" who had "no official business on property." (Doc. No. 19, Ex. A.) Plaintiff avers that this is false because she did have official business on the property, relating to her professional and academic duties as an adjunct faculty member at the time of the ban. (*Id.* ¶¶ 3.6; 3.26.)

Defendants allege that information generated by UT MD Anderson and its police department "was the result of [Plaintiff's] own incorrect assumptions regarding her employment status and her unauthorized visits to the premises," and thus the police reports and bulletin cannot be considered false statements. (Second Mot. at 18.) However, in evaluating a motion to dismiss, the Court must accept Plaintiff's allegations as true. Because Plaintiff claims she had official business on the UT MD Anderson Campus and permission to be in the BSRB, she has properly pleaded that the statements labeling her as a suspicious person with no official business on the property and no ability to enter the BSRB without an appointment are false.

### 3. Stigmatization

Additionally, the Court must consider whether Defendants "impose[d] a stigma on [Plaintiff] of the nature that works a deprivation of a liberty interest." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 108 (5th Cir. 1997). "A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." *Felder v. Hobby*, 199 F.3d 439, 1999 WL 1067892, *5 (5th Cir. 1999) (citing *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997)); *see also Cabrol*, 106 F.3d at 107-08 ("Terminations have imposed a stigma depriving plaintiffs of a liberty interest where the allegations supporting a termination involved dishonesty or immorality, and alcoholism, disloyalty, or subversive acts[.]") (citations omitted). "Such stigma usually derives from serious, specific charges and implies an inherent, or at least persistent, personal condition which both potential employers and one's peers would want to avoid." *Id.* at *5.

In *Cabrol*, the mayor terminated the plaintiff after a letter and public discussion about the "stinky, unsightly, [and] noisy" cockfighting chickens that he was raising in his yard. *Cabrol*, 106 F.3d at 104. The Fifth Circuit did not find a due process violation "[r]aising chickens for cockfighting purposes is not illegal and cockfighting itself is not illegal in Louisiana." *Id.* at 108. Here, unlike *Cabrol*, the communication was labeled a crime alert and identified Plaintiff as suspicious person, a "charge . . . that might seriously damage [her] standing and association in the community, or put [Plaintiff]'s good name, reputation, honor, or integrity at stake." *Id.* (internal quotations omitted) (quoting *Roth*, 408 U.S. at 573). The bulletin asked anyone who spotted Plaintiff on campus to report her to police, further indicating the severity of Plaintiff's alleged "suspicious activity." The accusations of crime, suspicious activity, and that Plaintiff had no official business activity were, according to Plaintiff's statement of facts, "false assertions of wrongdoing on the part of the plaintiff." *Blackburn*, 42 F.3d at 936

(emphasis removed). Plaintiff asserts that the charges were so stigmatizing that they created a "badge of infamy" that destroyed her ability to obtain other employment. The charges against Plaintiff in the crime alert and police report were not a suggestion of incompetence or deficient job performance, *see Felder,* 1999 WL 1067892, at *5, but rather suggest that Plaintiff was acting suspiciously and trespassing into areas that she was not allowed. Such statements imposed a stigma on her that could seriously damage her reputation and employment opportunities. The Court finds that Plaintiff has pled sufficient facts to survive a motion to dismiss.

### B. Attorneys' Fees Claim

Defendants also move to dismiss Plaintiff's claim for attorneys' fees because Plaintiff is proceeding pro se at this time.[4] It is true that a pro se plaintiff may not recover attorneys' fees for representing herself. *See Kay v. Ehrler*, 499 U.S. 423, 435–38 (1991). However, Plaintiff "could, at any time, retain an attorney to represent [her], in which case [s]he could recover attorney's fees." *Hunter v. D.C. Child & Family Servs. Agency*, 710 F. Supp. 2d 152, 161 (D. D.C. 2010). Thus, the Court denies Defendants' Third Motion to Dismiss as premature.

---

[4] Defendants also state that Plaintiff's claim should be dismissed because she does not include the legal basis for attorneys' fees. However, Defendants cite the relevant statutory authority for attorneys' fees as 42 U.S.C. § 1988. (Third Mot. at 3.) The Court considers Plaintiff's claim for attorneys' fees as one under this section.

## IV. CONCLUSION

For the reasons stated in this order, Defendants' Second Motion to Dismiss and Third Motion to Dismiss are **DENIED**. The parties are directed to confer about the remaining dates on the scheduling order (Exhibit 1 to this Order) and submit their agreed order within 14 days of the date of this Order.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 1st day of October, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE