UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JINGPING XU, | § |
| | § |
|     Plaintiff, | § |
| | § |
| v. | §   CIVIL ACTION NO. H-10-3711 |
| | § |
| THE UNIVERSITY OF TEXAS MD | § |
| ANDERSON CANCER CENTER, et al., | § |
| | § |
|     Defendants. | § |

## MEMORANDUM AND ORDER

Pending before the Court is Arlene Phillips ("Phillips") and Dr. Guillermina Lozano's ("Lozano") (collectively "Defendants") Fourth Motion to Dismiss ("Motion"). (Doc. No. 47.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motion should be **GRANTED**.

## I.    BACKGROUND[1]

Plaintiff brings a claim under 42 U.S.C. § 1983 against Defendants Arlene Phillips ("Phillips") and Dr. Guillermina Lozano ("Lozano"), in their individual capacities.[2] Plaintiff alleges that Defendants violated her right of due process under the Fourteenth Amendment.

---

[1] The facts of this case were laid out in the Court's October 1, 2012 Order, and are recounted in relevant part here. (Doc. No. 44, October 1, 2012 Memorandum and Order.) The facts are taken from Plaintiff's Second Amended Complaint (Doc. No. 30), as well as Plaintiff's Amended Response to Defendants' Motion for Rule 7 Response (Doc. No. 18) and Plaintiff's Amended Opposition to Defendant's Motion to Dismiss (Doc. No. 19). On May 11, 2011, the Court ruled that it would treat the latter two documents as the functional equivalent of an amended complaint. (Minute Entry of Motion Hearing on 5/11/2011.) These earlier pleadings remain pertinent because Plaintiff incorporates those portions of her previous pleadings that address her due process claim into her Second Amended Complaint. (*See* Doc. No. 30, at 1–2); Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985) (emphasis added) (recognizing that an amended complaint supersedes a prior complaint "unless the amended complaint specifically refers to or adopts the earlier pleading"). The allegations contained in these documents are accepted as true for purposes of the pending motion.

[2] The Court previously dismissed claims against UT MD Anderson and against the individual Defendants in their official capacities. (Doc. No. 29, February 22, 2012 Memorandum and Order.)

1

Plaintiff was employed for more than seventeen years by UT MD Anderson as a Research Scientist in the Department of Genetics. (Doc. No. 19 at 1.) Her employment ended due to the retirement of Dr. Michael Siciliano, the professor who led her department, the resultant closing of Dr. Siciliano's laboratory, and the end of grant funding for her position. (Doc. No. 19, Ex. B, at 1.) In August 2008, Plaintiff entered into an agreement with Phillips and Dr. Siciliano that entitled Plaintiff to continue working and receiving pay at the UT Department of Genetics, until October 28, 2008. (Doc. No. 18 ¶¶ 3.1.1–3.1.3.) At the instruction of Lozano, the Department Chair, Phillips prematurely terminated Plaintiff's employment on October 8, 2008. (*Id.* ¶ 3.1.4.) Phillips ordered Plaintiff to return her office keys and ID badge, and terminated Plaintiff's email account. (*Id.* ¶¶ 3.1.5, 3.1.6.)

On October 21, 2008, Plaintiff went to UT MD Anderson and delivered a grievance letter to Phillips. (*Id.* ¶¶ 3.2, 3.3.) Phillips reported Plaintiff's presence to the UT Police Department, and, based on Phillips' report, UT Police issued a Crime Alert Bulletin. (*Id.* ¶¶ 3.4, 3.5.) The Bulletin contained Plaintiff's photo and a physical description, and designated Plaintiff as a "suspicious person" to be reported immediately to the UT Police if seen on campus. (*Id.* ¶ 3.5.) The Bulletin also stated that Plaintiff "has no official business on property," even though Plaintiff had academic duties to carry out on the property. (*Id.* ¶ 3.6.) The issuance of the Crime Alert Bulletin, and the ban that it imposed, made it difficult for Plaintiff to perform her duties as an adjunct faculty member and, later, as an affiliated research fellow. (*Id.* ¶ 3.6.)

In November 2008, Lozano agreed to Dr. Siciliano's request to allow Plaintiff to return to work in the Basic Science Research Building ("BSRB") of UT MD Anderson. (*Id.* ¶¶ 3.7, 3.8.) Phillips emailed Plaintiff on December 1, 2008 to inform her that the restriction against Plaintiff's entrance into the BSRB had been lifted. (*Id.* ¶ 3.10.) Just two days later, Phillips saw

2

Plaintiff leaving the BSRB, and called the UT Police to report Plaintiff. (*Id.* ¶¶ 3.11, 3.12.) Defendants claim the police were called because Phillips witnessed Xu "leaving the Basic Science Research Building in a hurry with two large bags in her hands." (Doc. No. 36, at 9.) UT Police distributed the Crime Alert Bulletin to employees around the BSRB, and asked Plaintiff's former colleagues and others to report if they saw Plaintiff on campus. (Doc. No. 18 ¶¶ 3.13, 3.14.) Plaintiff protested and asked Defendants to take down the Crime Alert Bulletin and clear her name, but Defendants ignored Plaintiff's request. (*Id.* ¶¶ 3.15, 3.16.) Lozano insisted that Plaintiff continue to be barred from the campus, and further banned Plaintiff from being hired back to the UT Department of Genetics "on [sic] any capacity." (*Id.* ¶¶ 3.17, 3.18.)

In March 2010, Plaintiff sent a formal request to UT MD Anderson, Lozano, and Phillips for a "Name Clearing Hearing" and for "remedies to resolve past damages and to prevent future damages to Plaintiff." (*Id.* ¶ 3.20.) Defendants ignored Plaintiff's request. (*Id.* ¶ 3.21.) UT Police told Plaintiff that, under the ban currently in place, she is not allowed to interview for jobs or attend seminars, workshops, or other activities on any UT property. (*Id.* ¶ 3.23.) Plaintiff had been an adjunct faculty member of UT at the time of the ban, and had academic duties to carry out on the property. (*Id.* ¶ 3.26.) Plaintiff's requests for permission to enter the campus to attend activities at UT, including those comprising part of Plaintiff's professional/academic duties, were denied or ignored. (*Id.* ¶ 3.24.) On one occasion, UT threatened that the police would arrest her if she appeared on campus. (*Id.* ¶ 3.24.) Plaintiff alleges that her personnel file includes the following stigmatizing information: Lozano's order that Plaintiff was never to be hired by UT, an order that Plaintiff should be banned from campus, an accusation that Plaintiff threatened Phillips, and the police report and Crime Alert Bulletin. (Doc. No. 30 at 2–3; Doc. No. 19 at 7.) Furthermore, Plaintiff's Second Amended Complaint also alleges that both the police report

3

(Doc. No. 30, Ex. A) and Crime Alert Bulletin (Doc. No. 19, Ex. A) are available through a request to the police department. (Doc. No. 30 at 3.) Plaintiff has lost a national training grant (a fellowship awarded from the National Institute of Health) because she could not appear on campus to fulfill the grant requirements. (Doc. No. 18 ¶ 3.25.) Additionally, Plaintiff has suffered unemployment and under-employment due to the "unjustified label of infamy" placed on her by Defendants. (*Id.* ¶ 3.26.)

In ruling on Defendants' Second Motion to Dismiss and Third Motion to Dismiss, the Court held that the police report, the Crime Alert Bulletin, and the information in Plaintiff's personnel file that implicates Plaintiff in suspicious and criminal activity are stigmatizing, published statements that may support a procedural due process claim against Defendants. (*See* Doc. No. 44, at 9–14.) In their Second and Third Motions to Dismiss, Defendants did not raise a qualified immunity argument. (*Id.* at 8.) Defendants now move to dismiss Plaintiff's claim on a qualified immunity defense. (*See generally* Doc. No. 47.) Specifically, they argue Plaintiff cannot demonstrate that Defendants' actions were objectively unreasonable. (*Id.*)

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at

4

570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

5

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants." *Schultea*, 47 F.3d at 1432. "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999).

### III. ANALYSIS

#### A. Section 1983 Claim

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 338 (5th Cir. 2003). "[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz*, 533 U.S. 194 (2001). *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009). A court first asks the "'threshold constitutional violation question' of whether, taking the facts in the light most favorable to the plaintiff, the [defendant's] alleged conduct violated a constitutional right." *Lytle*, 560 F.3d at 409–10. If the alleged conduct amounts to a constitutional violation, the court proceeds to the "'qualified immunity question' of whether the right was clearly established at the time of the conduct." *Id.* at 410. If a court answers "both the constitutional violation and qualified immunity questions affirmatively, the [defendant] is not entitled to qualified immunity." *Id.* After the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), a court need not address these two questions in that particular order. *Pearson*, 555 U.S. at 236.

Although *Pearson* outlines only the two steps described above in the qualified immunity analysis, several Fifth Circuit panels have stated that the "qualified immunity question" also involves an inquiry into whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken. *See, e.g.*, *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless

7

entitled to qualified immunity if his conduct was objectively reasonable."). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted) (emphasis in original). "The 'defendant's circumstances' include[] facts know[n] to the defendant." *Id.* (citations omitted). "[I]t is of paramount import . . . to define 'clearly established law' at the proper level of generality" when assessing if a defendant acted in an objectively reasonable manner. *Id.* (citations omitted).

Defendants argue that Plaintiff has not pled facts that would support a conclusion that Phillips and Lozano's actions were objectively unreasonable. To determine whether Phillips and Lozano acted in an objectively reasonable manner, the Court must "turn back the clock" to 2008 and assess whether Defendants' conduct was objectively reasonable in light of the law governing procedural due process at that time. *Narren v. Livingston Police Dep't*, 86 F.3d 469, 474 (5th Cir. 1996). Plaintiff's due process claims are premised on the stigmatizing statements in the Crime Alert Bulletin, police report and Plaintiff's personnel file, which characterize Plaintiff as a "suspicious person," insinuate she had engaged in theft, and indicate that Plaintiff threatened Phillips. (Doc. No. 44, at 9–14; Doc. No. 30 at 2–3; Doc. No. 19 at 7; Doc. No. 19, Ex. A; Doc. No. 30, Ex. A.) Taking Plaintiff's allegations as true, as this Court must do at the Motion to Dismiss stage, the Court considers whether the actions taken by Lozano and Phillips that allegedly led to the publication of false and stigmatizing information about Plaintiff were objectively unreasonable.

It is not entirely clear on what theory Plaintiff seeks to hold Phillips liable for the publication of the Crime Alert Bulletin or police report. In October 2008, after being

prematurely terminated, Plaintiff returned to the BSRB and "peacefully" gave Phillips a grievance letter. (Doc No. 18 ¶¶ 3.1.4, 3.2–3.3.) Phillips then called the police. (Doc. No. 18 ¶ 3.4.) On the facts pled, this Court doubts many officials in Phillips' position would have found it necessary or appropriate to report Plaintiff to campus police in October 2008. However, the objective reasonableness inquiry focuses not on whether many officers would have acted in the same manner, but whether *all* reasonable officials in the defendant's circumstances would have then known that reporting Plaintiff to the police would have infringed on a protected liberty interest. *See Thompson*, 245 F.3d at 457. Here, the Court cannot so conclude.

One clearly established theory of liability requires Phillips to have made false, stigmatizing statements about Plaintiff outside the workplace. *See Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Ortwein v. Mackey*, 511 F.2d 696, 699 & n. 3 (5th Cir. 1975). However, Phillips' statements to UT police cannot be characterized as statements Phillips made outside the workplace. This Court's prior Memorandum and Order may have suggested that Phillips could be held accountable for the publication, by UT police, of the false statements in the Crime Alert Bulletin to the broader public. (Doc. No. 44 at 9); *see Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (indicating that a defendant may be liable for false statements "made (or caused to be made)"). The Court need not decide, at this stage, whether such a theory of liability is viable. In 2008, it was not clearly established whether and to what extent an individual can be held liable for false statements she made within the workplace that were subsequently be published outside the workplace. The case law this Court has reviewed generally involves statements actually published by a defendant. *See, e.g.*, *also Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997) (allegedly stigmatizing statements were made by defendant mayor); *Felder v. Hobby*, No. H–98–0017, 1998 WL

35280559, at *3 (S.D. Tex. Nov. 2, 1998) (defendant allegedly publicized stigmatizing statements to individuals within the University and to the media); *Patterson v. Housing Authority of Pearsall*, No. SA-05-CA-1155-XR, 2006 WL 2322887, at *8 (W.D. Tex. July 27, 2006) (defendant Board of Commissioners allegedly made stigmatizing statements about plaintiff to several media outlets). Accordingly, the Court concludes that when Phillips called UT police in October 2008, she was not acting in an objectively unreasonable manner.

For the same reasons, Phillips was not acting in an objectively unreasonable manner when she contacted the police in December 2008. It was not clearly established whether and under what circumstances a defendant could be liable for allegedly false statements made within the workplace but published outside the workplace by another. Furthermore, with regard to this second incident, Plaintiff has not pled that she did not hurriedly leave UT MD Anderson with a large trash bag, as the police report attached to Plaintiff's Complaint indicates. (Doc. No. 30, Ex. A.) Plaintiff does contend that other portions of the report are false, challenging, for instance, the allegation that she was not allowed into the BSRB without an appointment. (Doc. No. 30, at 2–3.) However, if Phillips did indeed see Plaintiff leave the BSRB in a hurry with a large trash bag, the Court cannot say that it was unreasonable for Phillips to alert the police. If an individual acts in a manner that might reasonably suggest she was improperly removing governmental property, alerting the police to this perceived wrongdoing would be entirely appropriate, even if it turns out the individual had not, in fact, engaged in any misconduct. *See Thompson*, 245 F.3d at 457 (indicating that whether a defendant's actions are objectively reasonable depends on the facts known to the defendant).

Although Plaintiff does not specify whether Lozano should also be held liable for the publication, by UT police, of the Crime Alert Bulletin or police report, the Court finds that

Lozano's connection to such publication is even more tenuous. At most, Lozano incorrectly informed Phillips that Xu's employment should be terminated on October 8, 2008. (Doc. No. 18 ¶ 3.1.4.) The Court is aware of no clearly established precedent that would support holding Lozano liable for the publication of false statements by UT Police.

Plaintiff's remaining basis for her claim is the alleged inclusion in her personnel file of Lozano's orders that Plaintiff was never to be hired by UT and that Plaintiff should continue to be banned from campus, and an accusation that Plaintiff threatened Phillips, and the police report and Crime Alert Bulletin. (Doc. No. 30 at 2–3; Doc. No. 19 at 7.) As this Court has already held, the inclusion of information in Plaintiff's personnel file suggesting that Plaintiff engaged in suspicious and criminal conduct is stigmatizing. (Doc. No. 44 at 11.) Plaintiff's publication theory is premised on her allegation that her personnel file is publically available, because the personnel file is subject to disclosure through the Public Information Act. (Doc. No. 30 at 3.) In 2008, when the objectionable information was allegedly placed in Plaintiff's personnel file, it was clearly established that failing to provide an opportunity to be heard on the inclusion of allegedly false and stigmatizing information in a publically available personnel file was a violation of due process. *See Tebo v. Tebo*, 550 F.3d 492, 504 (5th Cir. 2008); *Hughes v. City of Garland*, 204 F.3d 223, 227 (5th Cir. 2000); *Burris v. Willis Indep. Sch. Dist., Inc.*, 713 F.2d 1087, 1092 (5th Cir. 1983); *Swilley v. Alexander*, 629 F.2d 1018, 1022 (5th Cir. 1980). Plaintiff has not, however, pled that Lozano or Phillips personally placed the false and stigmatizing statements into Plaintiff's personnel file, as she must to do to hold them individually liable for the fact that the stigmatizing information is in her personnel file. *Bellard v. Gautreaux*, 675 F.3d

11

454, 463 (5th Cir. 2012) (granting summary judgment to defendant in part because plaintiff had not proven defendant personally placed defamatory statements in plaintiff's personnel file).[3]

Based on the foregoing, Defendants' Motion to Dismiss must be **GRANTED**. Plaintiff's sole remaining avenue toward relief is pleading that Lozano or Phillips (or both) personally placed stigmatizing and false information into Plaintiff's personnel file. The Court is well aware that Plaintiff, without discovery, may not actually know who placed the stigmatizing information in her personnel file. However, if Plaintiff pleads facts suggesting Lozano or Phillips were likely involved in placing the stigmatizing information into her personnel file, that will satisfy her burden. For instance, one way Plaintiff might satisfy her burden would be to plead that Lozano or Phillips spoke with Human Resources and relayed false and stigmatizing information or paperwork to those individuals who maintained personnel files with the intent that such information be added to the files. However, the Court does not mean to foreclose other fact patterns. Plaintiff has thirty days to amend her complaint to plead that Lozano or Phillips (or both) personally placed stigmatizing information in her personnel file.

### B. Request for Stay

Defendants also seek, in their prayer for relief, that discovery be stayed pending the resolution of qualified immunity. (Doc. No. 47 at 9.) The Court's resolution of Defendants' Motion render this request moot. Should Plaintiff file an amended complaint, parties will be expected to begin conducting discovery expeditiously.

## IV.   CONCLUSION

---

[3] Plaintiff has indicated that UT MD Anderson's Human Resources Department questioned her based on "Phillips' report on file." (Doc. No. 30 at 3.) It is not clear, however, whether the report is the police report previously discussed (and if it was not, what this report states), or whether Phillips was even the person who brought the report to the attention of Human Resources.

12

For the reasons stated in this order, Defendants' Fourth Motion to Dismiss (Doc. No. 47) is **GRANTED**.  Plaintiff has thirty days to amend her complaint to cure the defects identified in the Memorandum and Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 4th day of April, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE